(141 App. Div. 891.)

In re AHLERS.

(Supreme Court, Appellate Division, Second Department. December 30, 1910.)

1. STATUTES (§ 225¾*)—CONSTRUCTION—RE-ENACTMENT OF PRECEDING STATUTES.

Where a statute is a re-enactment of preceding statutes, its meaning is to be found in the intent of the preceding statutes, and in ascertaining such intent the history of the enactments is to be considered, and in their consolidation it is to be deemed that the Legislature intended to preserve the preceding enactments in force to the fullest extent in which they are mutually consistent.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 306; Dec. Dig. § 225¾.*]

2. INTOXICATING LIQUORS (§ 91*)—EXCISE TAXES—COMPUTATION—CONSTRUCTION OF STATUTES—"EVERY PLACE IN THIS STATE."

Laws 1896, c. 112, provided a general but varying scheme of excise payments, fixing as a place for the maximum a city of 1,500,000 population or more according to the last state census, except where the state census of 1895 did not show the population of the city or village where the population was to be determined by the last United States census. Subsequently, after the organization of Greater New York, Laws 1897, c. 442, supplementary to the law of 1896, provided that the rate of liquor tax payable in the localities consolidated into the new city of New York should continue at the same amount as was payable in the separate localities on December 31, 1897. Laws 1900, c. 367, § 1, subd. 7 (re-enacted in Liquor Tax Law [Consol. Laws, c. 34] § 8, subd. 8), provided that the excise tax in every place in this state shall remain the same as assessed for 1899, until changed by an enumeration authorized by the state commissioner of excise, or by an increase or decrease in population shown by a subsequent state or United States census. *Held*, that the phrase "every place in this state" means every such place subject to the provisions of the liquor tax law, including localities embraced in the greater city of New York by its charter.

[Ed. Note.—For other cases, see Intoxicating Liquors, Dec. Dig. § 91.*

For other definitions, see Words and Phrases, vol. 3, pp. 2515–2517; vol. 8, p. 7655.]

3. INTOXICATING LIQUORS (§ 91*)—EXCISE TAXES—COMPUTATION—CONSTRUCTION OF STATUTES—"SUBSEQUENT STATE OR UNITED STATES CENSUS."

The phrase "a subsequent state or United States census," as used in Laws 1900, c. 367, § 1, subd. 7 (re-enacted in Liquor Tax Law [Consol. Laws, c. 34] § 8, subd. 8), means a state or United States census subsequent to 1899, so that the automatic reajustment of rates began with the United States census of 1900, the intent being that the basis of the computation should rest for alternative five-year periods on a preceding state or United States census, state census being taken in 1895 and decennially thereafter, and the rate payable for liquor tax in Brooklyn in advance on September 15, 1910, was determinable on the basis of population shown by the United States census of 1910.

[Ed. Note.—For other cases, see Intoxicating Liquors, Dec. Dig. § 91.*]

Appeal from Special Term, Kings County.

Application of Hermann Ahlers for a writ of certiorari against Maynard N. Clement, State Commissioner of Excise, and another. From a certain order (69 Misc. Rep. 177, 124 N. Y. Supp. 1009) in favor of applicant, respondents appeal. Reversed and dismissed.

Argued before JENKS, BURR, THOMAS, RICH, and CARR, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Robert J. Fish (Herbert H. Kellogg and William C. Van Loon, on the brief), for appellants.

Grant C. Fox (George E. Mott, Frederick E. Grant, Ashbel P. Fitch, and Morton C. Fitch, on the brief), for respondent.

CARR, J.   As a result of the census taken in 1910 under the provisions of the acts of Congress thereto applicable, it was found that the population of the borough of Brooklyn in the city of New York amounted to 1,634,351 persons.   This census was completed prior to September 15, 1910.   By section 9 of the liquor tax law of this state (chapter 34 of Consolidated Laws of 1909), the liquor taxes are payable in advance on the 15th day of September of each year.   The relator Ahlers is engaged in business in the borough of Brooklyn as retail dealer in liquors.   He applied for the issuance to him of a liquor tax certificate and tendered the amount of $975 in payment of the tax thereon.   A certificate was refused unless the relator paid the sum of $1,200.   The tender made by Ahlers was of an amount legally sufficient for the purpose, unless the rate of liquor tax payable in the borough of Brooklyn had been automatically advanced to the sum of $1,200 by the increase in population shown by the census aforesaid. The contention of the state department of excise is that there was such an automatic advance.   The relator thereupon brought this proceeding to review the determination of the state excise commissioner as to the amount legally payable on the liquor tax certificate.   It was held at Special Term that the amount so payable in advance on September 15, 1910, was the sum of $975.   From that decision, this appeal was taken to this court.

The question involved is one of statutory construction and arises from the true interpretation of subdivision 8 of section 8 of the statute above cited.   Before passing to a consideration of the language of the statute which gives rise to this controversy, it may be well to make a few observations relative to the general aspects of the statute in question.   This statute is not a new enactment.   It was intended as a coherent compilation or consolidation, in the form of a re-enactment, of all existing statutes in any way affecting the subject-matter of liquor taxes in this state.   The original statute on this question was chapter 112 of the Laws of 1896, which in many of its features was amended continuously at nearly every succeeding session of the Legislature.   By chapter 115 of the Laws of 1903, the original statute underwent considerable revision.   The act of 1909 is the re-enactment in a consolidated form of the act of 1896 as amended or revised in the meantime.   From an examination of the statute in its various phases of evolution, it is noticeable that in the revision of 1903 and in the consolidation of 1909 the Legislature endeavored to preserve the older forms of expression with as little change as possible, and from this endeavor arises the seeming obscurity which gives rise to this controversy.

The rules of construction which apply to a statute which is a re-enactment of preceding statutes are so well settled as to be recognized generally on their mere statement.   The meaning of the language of

the re-enactment is to be found in the intent of the preceding statutes so re-enacted. In ascertaining this intent the history of the various enactments is to be considered. In their grouping together in a consolidation, it is to be deemed that the Legislature has intended to preserve the preceding enactments in force to the fullest extent in which they are consistent mutually.

The portion of the consolidated statute here directly involved reads as follows:

"The amount of excise tax in every place in this state shall remain the same as assessed for the year eighteen hundred and ninety-nine, until changed by an enumeration authorized by the state commissioner of excise, or by an increase or decrease of population shown by a subsequent state or United States census, and such excise tax assessed in each place enumerated under this subdivision and assessed in each place where a change in the population is shown by the latest state or United States census shall be the same as that provided in subdivisions one, two, three and six of this section, for places containing the same population. The excise taxes assessed under this chapter in cities containing a population of fifteen hundred thousand or more, which are or shall be formed by the consolidation of territory situate in one or more counties, shall be assessed in the several boroughs or portions of the territory so consolidated to form such city at an advance of one-half in the rate over the amount at which such taxes were assessed on the thirty-first day of December, nineteen hundred and two, in the several portions of the territory so consolidated."

As above indicated, we must ascertain the meaning of this provision, wherever any ambiguity or conflict seems apparent, by resorting to the preceding enactments here attempted to be consolidated. By chapter 112 of the Laws of 1896, the Legislature made an original act treating the subject-matter of liquor taxes on a general basis, instead of leaving it to be regulated as theretofore in the various localities largely by special statutes. This act became a law on March 23, 1896. It provided a general scheme of tax or excise payments, varying according to the population of the respective places in which the business of liquor selling was to be carried on. It fixed rates from $800, as the maximum, to $100, as the minimum. In adjusting these rates, it fixed as the place for the maximum a city having a population of 1,500,000 or more according to the last state census, and in adjusting the other rates it chose for classification cities and villages with described population as shown by the "last state census." It did not attempt to carry this classification as to population beyond villages having not more than 1,200 population. As to villages not having that population and as to every other place not in a city or village, it fixed the minimum rate of $100. The amount of the population was made ascertainable by "the last state census," for that census was the latest official census then in existence. An enumeration of the inhabitants of the state was directed to be had in 1895, by section 4 of article 3 of the Constitution of 1894, and the same section provided for an enumeration every tenth year thereafter. Therefore the Legislature, in adopting as the basis of its classification as to population "the last state census," adopted the latest official census available, as the next latest official census was the decennial census of the United States which had been made in 1890. Where, however, the state cen-

sus of 1895 did not show the population of a city or village, it was provided that the population should be determined by the last United States census. Chapter 112, Laws 1896, § 11. The statute, as then enacted, contained no scheme for any advance or decrease in the rates of the liquor tax based upon any subsequent increase or decrease of population in the classified localities.

While this statute was in force in 1897, the Legislature enacted the "Greater New York Charter," which consolidated into one city several pre-existing cities of varying populations, and a very large number of incorporated villages, likewise of varying populations. The result of this consolidation would have been to bring apparently under the maximum rate of liquor tax a large number of communities to which it had not been the legislative intent to make such rate applicable. The "Greater New York Charter" was to go into effect on January 1, 1898. To meet this situation, chapter 442 of the Laws of 1897 was enacted. This act is entitled as "an act supplementary" to the general liquor tax law of 1896. It provided that, so far as the liquor tax law was concerned, the rate of liquor tax payable in the localities consolidated into the new city of New York should continue at the same amount as was payable in these separate localities on December 31, 1897. In no other particular, however, were these localities taken out of the general scope of the act of 1896. In 1900 an attempt was made, for the first time, to provide for an automatic scheme for an increase or decrease of the rate of liquor tax in the various localities of the state upon the basis of an increase or decrease in population. This scheme was declared in chapter 367 of the Laws of 1900, which, in part, amended subdivision 7 of section 11 of chapter 112 of the Laws of 1896, as it stood in form as amended in the meanwhile. The new scheme was declared in language as follows:

"The amount of excise tax in every place in this state shall remain the same as assessed for the year eighteen hundred and ninety-nine, until changed by an enumeration authorized by the state commissioner of excise, or by an increase or decrease of population shown by a subsequent state or United States census, and such excise tax assessed in each place enumerated under this subdivision and assessed in each place where a change in the population is shown by the latest state or United States census shall be the same as that provided in subdivisions one, two, three and six of this section, for places containing the same population."

A determination of the meaning and scope of this new provision as it was enacted in 1900 determines necessarily this present controversy, for, as before indicated, this language, which is re-enacted in 1909 in the very same words, means the very same thing as it meant when declared originally in 1900. It will be noticed that this then new provision declared in most comprehensive terms that it applied to "every place in this state." A broader term than "every place in this state" could not have been used easily, if at all. The phrase "every place in this state" was clearly intended to mean "every place in this state" subject to the provisions of the liquor tax law. Unmistakably it applied to the "places" described in the supplementary act of 1897, which were located within the territory of the greater city of New York after January 1, 1898. The supplementary act of 1897

did not take these "places" out of the provisions of the general act of 1896, but, on the contrary, simply continued and preserved them, for the purposes of liquor tax rate, in the same status of "place" as they had under the act of 1896, notwithstanding the consolidation of territory effected on January 1, 1898, by the "Greater New York Charter."

It seems indisputable, therefore, that the new scheme of automatic increase or decrease in the rate of the liquor tax "in every place in this state" was intended to apply in the city of New York as well as in every other place in the state. The scope of the application of this new matter being thus determined, we are brought to a consideration of the meaning of this new matter so far as it provides for a basis of computation of population for its going into effect. In the language of the statute, the basis provided was that "shown by a subsequent state or United States census" or "by the latest state or United States census." When this particular enactment was made, the latest state census was that of 1895, and the latest United States census that of 1890. The Legislature knew that the next census would be the decennial census of the United States to be made in 1900, in a few months after the enactment of the amendatory statute, which in turn would be followed by a state census in 1905, under the direction of the state Constitution. Thus either under the state Constitution or under the acts of Congress there would be an official census every five years.

The argument of the respondent, which prevailed at Special Term, is that the Legislature intended to rest this new automatic scheme of increase or decrease in the rate of the liquor tax solely on the basis of the state census, except that, in a case where the last state census did not show the population in a particular locality, recourse might be had to the latest United States census. The result of this contention would be that generally the automatic scheme would operate at intervals of ten years and not of five. The statute did not so declare. To have it so declare, it would be necessary to read into the new matter of 1900 a qualifying clause, which would expressly so limit its application to a case where the population of a place was not shown by the latest state census. It is, of course, undeniable that the statute, as it stood prior to 1900, started with the returns of the last state census—that is, that of 1895—as the basis for a fixation of the liquor tax rate in the various places in the state. As so framed, however, it had no scheme of automatic increase or decrease in the rate. This rate was fixed as permanent, subject, however, to legislative change. The scheme of 1900 was, however, entirely new. It provided for a starting point as follows:

"The amount of excise tax in every place in this state shall remain the same as assessed for the year eighteen hundred and ninety-nine, until changed," etc.

This change was to occur, so far as this case is concerned, "by an increase or decrease of population shown by a subsequent state or United States census, and such excise tax assessed in each place * * * where a change in the population is shown by the latest state or United

States census shall be the same as that provided in subdivisions one, two, three and six of this section, for places containing the same population." This language was entirely prospective in its nature. The Legislature knew the decennial United States census of 1900 was about to be taken. When it said "a subsequent state or United States census," it meant a state or United States census subsequent to 1899. This seems too clear for any argument whatever. If so, then the automatic scheme began its operation with the United States census of 1900. The operation rested upon that census, until the subsequent state census which should take place, under the state Constitution in 1905. The automatic scheme thus set in motion was intended to continue resting every five years, alternately, on a state or United States census, unless otherwise changed by subsequent statute. Now in 1903, by chapter 115 of the Laws of that year, the liquor tax law was revised and amended. No change was made in section 11 of the original act as amended by the act of 1900, except in one particular. The matter formerly in the supplementary act of 1897, which related to the "places" located in the territory of the greater city of New York, was incorporated with a slight change in section 11 of the revising act, and the supplementary act was expressly repealed. This left the act of 1896, as amended by the act of 1903, the sole legislative declaration as to the liquor tax law of this state.

The change, just referred to, was that in the supplementary act, so expressly repealed, the rate of liquor tax was continued as to the places within the city of New York, the same as it was fixed on December 31, 1897, while in the transfer of this matter to the act of 1903 the rate made payable in that particular territory was fixed "at an advance of one-half in rate over the amount at which such taxes were assessed on the thirty-first day of December, 1902." The liquor taxes in said territory were in the main assessed on December 31, 1897, and December 31, 1902, at the same rate, and the change in these dates is immaterial for this discussion. The advance of rates to the extent of one-half was a general feature of the act of 1903, and took effect in every place in the state, as is shown by an examination and comparison of the various statutes. In framing the amendment or revision of subdivision 7 of section 11 of the act in 1903, some little lack of skill was shown in one particular, as follows: Subdivision 1 of this section as amended in 1903 made a general advance in the rate of the liquor tax to the extent of one-half the amount of the former rate. The Legislature, when it re-enacted subdivision 7 of the same section as amended by the law of 1900, failed to notice that there was some incongruity in declaring that "The amount of excise tax in every place in this state shall remain the same as assessed for the year eighteen hundred and ninety-nine," etc., in view of the fact that in the very same section it had just advanced the amount of the liquor tax to the extent of one-half in every place in the state. This incongruity, however, is not a matter of importance on the question now before us, as the legislative intent is quite plain, however awkwardly it may be expressed. The language as to the automatic scheme as expressed in the act of 1903

means precisely what it did in the act of 1900. Likewise its redeclaration in the consolidated act of 1909 has the same meaning precisely.

As we construe this meaning, the rate payable for liquor tax in the borough of Brooklyn in advance on the 15th of September, 1910, is to be determined on the basis of the population of said borough as shown by the United States census of 1910.

These views require that the order and determination of the Special Term be reversed, and the writ of certiorari be dismissed, with costs. All concur.

BURR, J.  I concur, but venture to suggest that any confusion arising from the language of subdivision 1 of section 8 of the liquor tax law, which specifies the basis for fixing the amount of the tax as the population determined by the "last state census," may be avoided if we keep firmly in mind that subdivision 1 is dealing with a condition existing at the time that the law became operative, while subdivision 8 deals with a condition subsequently to arise. As Mr. Justice CARR clearly points out in his opinion, when the act of 1900 was passed, the Legislature knew that the last state census was in 1895, and that the decennial United States census was about to be taken. So it may be urged that, when the act of 1909 was passed, the Legislature knew that the most recent determination of population was that obtained through the state census of 1905, and it therefore referred to that as a basis for fixing the amount of the present tax. In providing for automatic changes in the future, it knew of the obligation to take a United States census in 1910, and another state census in 1915, and it therefore referred to each of these methods of enumeration as a basis of computation.

